# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RHONDA H. MORRISON | *CIVIL NO. 06-2400 |
| VERSUS | *MAGISTRATE JUDGE HILL |
| UNUM LIFE INSURANCE COMPANY OF AMERICA | *BY CONSENT OF THE PARTIES |

### REASONS FOR JUDGMENT

Pending before the court is the Motion for Summary Judgment filed by filed by Unum Life Insurance Company of America ("Unum"). [rec. doc. 44]. Plaintiff, Rhonda Morrison ("Morrison") has filed Opposition, to which Unum has filed a Reply. [rec. docs. 50 and 48]. Unum also filed a Supplemental Brief, to which plaintiff filed Opposition. [rec. docs. 53 and 57]. Oral argument was held on July 22, 2008 and the Motion was taken under advisement. This Ruling follows.[1]

### BACKGROUND

Morrison has a history of polio, having been first diagnosed in 1957, as a result of which she is confined to a wheelchair. In 1998, while employed by Tenet Healthcare Corporation, Unum issued a policy of disability insurance to Morrison. On October 22, 1999, Morrison was injured in an automobile accident. She is considered permanently disabled by her treating physicians.

Unum paid Morrison short term disability benefits due under the policy. Her claim was then transferred to Unum's long term disability unit for consideration of Morrison's eligibility

---

[1] All parties consented to the exercise of this Court's jurisdiction by the undersigned. *See* rec. doc. 17.

for long term disability benefits. On July 26, 2000, Unum approved Morrison's claim for long-tern disability benefits, under a reservation of rights, while Unum awaited additional information to make a final benefit determination. Morrison was advised of the potential applicability of the pre-existing condition clause in her policy.

The policy excludes coverage for "disabilities caused by, contributed to by, or resulting from" a pre-existing condition if:

- you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 12 months just prior to your effective date of coverage; and

- the disability begins in the first 24 months after your effective date of coverage unless you have been treatment free for 12 consecutive months after your effective date of coverage.

Morrison was paid long term disability benefits through October 21, 2000. However, by letter dated November 17, 2000, Morrison was advised that her benefits were being terminated under the policy's pre-existing condition clause because Morrison had been treated for "post-polio syndrome" on November 10, 1998, during the relevant pre-existing limitation period.

In denying Morrison benefits, Unum stated as follows:

. . . a person with no other complications, who suffered the injuries that you did in the motor vehicle accident would be recovered from them within one year. As a result of your post polio syndrome, your recovery has been complicated and extended.

Since you were treated within the pre-existing period . . . for post polio syndrome, we must deny any liability on your claim for post polio syndrome and any complications resulting from your post polio syndrome. Therefore, you were due benefits to October 22, 2000 for the injuries you sustained in the motor vehicle

accident for which a person with no other complications would be recovered from their injuries within one year.

Morrison did not file a timely administrative appeal.

Morrison's claim for long term disability benefits was re-evaluated by Unum pursuant to a Regulatory Settlement Agreement between Unum, various insurance regulators and the Department of Labor. By letter dated July 11, 2006, Unum upheld its previous denial of Morrison's claim again citing pre-existing "post polio syndrome."

As a result of these actions, Morrison filed suit on December 27, 2006. She asserts a claim against Unum under Title III of the ADA which prohibits discrimination against individuals with disabilities in affording access to public accommodations, which Morrison alleges includes access to insurance.[2] Specifically, Morrison claims that Unum's determination that she would have recovered from the effects of her motor vehicle accident within one year, but for her "post polio syndrome", discriminatorily and arbitrarily denied her access to the insurance coverage for which she contracted, and, as such, was a disability-based discriminatory decision which violated Title III of the ADA. She further asserts that the denial of benefits based on "post polio syndrome" is a subterfuge to evade the purposes of Title III of the ADA.

Therefore, Morrison asks this court to reverse Unum's adverse claims decision, and find her permanently disabled from the injuries received in the motor vehicle accident "without

---

[2]This court has previously found that insurance is a "good", and that the provision of insurance by an insurer may properly be considered a "public accommodation" under Title III of the ADA. *See* rec. doc. 32.

3

regard to whether her pre-accident condition predisposed her to a lengthier than normal recovery as compared to an otherwise healthy individual." Accordingly, Morrison asks for a judgment awarding her all past due benefits, prejudgment and post-judgment interest and attorney fees. [rec. doc. 1, ¶ 22, 23, 24]. At the close of her complaint, Morrison further prays for "all other equitable and legal relief as may be appropriate . . . ."

Morrison additionally asserts a claim against Unum under Louisiana state law, alleging that Unum's adverse benefits decision was in violation of La.R.S. 22:652.1 which prohibits unfair discrimination in the payment of benefits under an insurance policy because the owner of the policy has a severe disability. [*Id.* at ¶ 25 and 26].

Morrison asserts this court's jurisdiction on her Title III claim solely on the basis of the ADA. In addition, she requests that this court exercise its supplemental jurisdiction over her state law claim. [*Id.* at ¶ 2]. She does not invoke this court's federal question jurisdiction under ERISA.

In the instant Motion, Unum moves for summary judgement on several grounds: (1) that Title III of the ADA does not permit a private action for monetary damages; (2) that Morrison's suit seeks to regulate a specific policy provision or the content of the policy which is not permitted under the ADA; (3) that the ADA's "safe harbor" provision prohibits any attempt to restrict the administration of a *bona fide* benefit plan; (4) that Morrison's claims are time barred; and (5) that Morrison's state law claim is preempted and fails on the merits.

For the following reasons, the Motion for Summary Judgment filed by Unum is **GRANTED** in part, and, accordingly, Morrison's claim under Title III of the ADA is **DISMISSED WITH PREJUDICE**. Morrison's state law claim is hereby **DISMISSED WITHOUT PREJUDICE**.

## Motion for Summary Judgment Standard

Fed.R.Civ.Proc. Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed.R.Civ.Proc. Rule 56(e) provides, in pertinent part, as follows:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Unum's Motion for Summary Judgment is properly made and supported. Thus, Morrison may not rest upon her allegations or denials in her pleadings, but rather must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986).

However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions and those supported by only a scintilla of evidence are insufficient. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Additionally, summary

judgment is mandated against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2552.

The issues this court determines are legal, and involve no issues of material fact. Accordingly, summary judgment on Morrison's federal claim under Title III of the ADA is proper.

## LAW AND ANALYSIS

**I. Plaintiff's Claim under Title III of the ADA**

Claims under the ADA may be brought by either private aggrieved individuals or the Attorney General. 42 U.S.C. § 12188. In addition to the remedies specifically available under the ADA, private individuals may utilize the remedies and procedures made available by 42 U.S.C. § 2000a-3(a) of the Civil Rights Act, which authorizes private individuals to bring a civil rights action seeking "preventive relief" in the form of a "permanent or temporary injunction, restraining order, or other order . . . ." 42 U.S.C. § 12188(a)(1) *citing* 42 U.S.C. § 2000a-3(a). The United States Supreme Court has construed § 2000a-3(a) as limiting the private right of action to one for an injunction and reasonable attorney fees, despite the inclusion of the expansive phrase "or other order." *Newman v. Piggie Park Ent., Inc.*, 390 U.S. 400, 401-402, 88 S.Ct. 964 (1968).[3] Thus, courts have uniformly held that monetary damages

---

[3]The Supreme Court explained that a § 2000a-3(a) plaintiff primarily seeks not redress of his own injury, but to vindicate the policy of the United States government. *Newman*, 390 U.S. at 402, 88 S.Ct. 964. Thus, "[i]f he obtains an injunction, he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Id*.

are not available in private suits under Title III of the ADA. *Wander v. Kans*, 304 F.3d 856, 858 (9th Cir. 2002); *Goodwin v. C.N.J., Inc.*, 436 F.3d 44 (1st Cir. 2006); *Powell v. National Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2nd Cir. 2004); *Bowers v. NCAA*, 346 F.3d 402, 433 (3rd Cir. 2003); *Am Bus. Ass'n v. Slater*, 231 F.3d 1, 5 (D.C. Cir. 2000); *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 293 (6th Cir. 1999); *Jairath v. Dyer*, 154 F.3d 1280, 1283 fn. 7 (11th Cir. 1998); *see also Riggs v. Cuna Mut. Ins. Society*, 42 Fed.Appx. 334, 335-36 (10th Cir. 2002) (unpublished).

Morrison does not dispute that a private litigant is entitled only to injunctive relief, and not monetary damages, under the jurisprudence. However, she characterizes her claim as "different" from other Title III claims in that she is not seeking "traditional monetary damages." Rather, she argues that her claim, although seeking a monetary judgment for past due benefits, is, in actuality, a claim for mandatory injunctive relief, to wit, ordering Unum to perform its contractual obligations under the policy. She cites no jurisprudential support for her position, and this court has found none. Moreover, during oral argument, counsel for Morrison admitted that he knew of no case in which a court ordered injunction under the ADA resulted in payment of money directly to the plaintiff; counsel also said he knew of no case in which a court granted an injunction under the ADA which ordered the performance of a contractual obligation to pay money directly to the plaintiff.

While the Fifth Circuit has not specifically held, in the context of a suit seeking benefits under a disability policy, that the payment of money directly to the plaintiff is not available, in

light of the above cited case law, the court finds that such a remedy, whether characterized as a claim for damages or injunctive relief, is not a proper remedy under Title III of the ADA.

In an unpublished decision, the Tenth Circuit has upheld the dismissal of an ADA claim against a disability insurer who had denied benefits under its pre-existing condition clause, in part, because the plaintiff had requested only money damages which the court found were not permitted under the Title. *Riggs v. Cuna Mut. Ins. Society*, 42 Fed.Appx. 334 (10th Cir. 2002) (unpublished). While *Riggs* has no precedential value in this Circuit, given the factual similarities between *Riggs* and the case presently before this court, and the lack of any other guidance directly on point, this court will not ignore the principle on which *Riggs* relies, and finds the reasoning of the *Riggs* opinion persuasive. Both the ADA and the jurisprudence interpreting the ADA preclude an award of money to a private individual. In its essence, that is the remedy that Morrison seeks here. Because the remedy which Morrison seeks is not available under Title III of the ADA, her federal claim will be dismissed with prejudice.

Even if plaintiff's suit could be characterized as seeking relief available under Title III of the ADA, her claim nevertheless fails because her suit, in essence, seeks to regulate the content of the Unum policy, which is not permitted under Title III of the ADA.

Title III of the ADA provides the "general rule" that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA then lists several "activities" prohibited

under the "general rule" that constitute discrimination, including the provision of unequal benefits as follows:

> Participation in unequal benefit
>
> It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

42 U.S.C. § 12182(b)(1)(A)(ii).[4]

Morrison asserts that Unum's invocation of its pre-existing condition provision, and termination of benefits pursuant to that provision, was an act of discrimination. Plaintiff contends that she was denied the full and equal enjoyment of the benefits afforded under the Unum policy because, in making its benefits decision, Unum treated her differently than non-disabled policy holders because of her disability.

In *McNeil v. Time Insurance Company*, 205 F.3d 179, 188 (5th Cir. 2000), the Fifth Circuit construed Title III as prohibiting discrimination in the "full and equal enjoyment of the goods and services that the place of public accommodation offers." *Id.* at 186. In making this determination, the court noted that although "it is literally possible, though strained, to construe 'full and equal enjoyment' to suggest that the disabled must be able to enjoy every good and

---

[4]This defining subparagraph contains a limitation as set forth in 42 U.S.C. § 12182(b)(1)(A)(iv): "For purposes of clauses (i) through (iii) of this subparagraph, the term 'individual or class of individuals' refers to the clients or customers of the covered public accommodation that enters into the contractual, licensing or other arrangement."

service offered to the same and identical extent as those who are not disabled . . . such a reading is plainly unrealistic, and surely unintended, because it makes an unattainable demand." *Id.* at 187. Therefore, the court limited the reach of the prohibition, to exclude regulation of the content of the goods that the business offers, and, in the case of insurance, the content of the "policy as written and offered to the non-disabled public." *Id.* at 186. Therefore, "the owner [of a public accommodation] need not modify or alter the goods and services that it offers in order to avoid violating Title III." *Id.* at 188.

In *McNeil*, the policy at issue contained an express limitation on coverage for several specific health problems, including a limitation on coverage for AIDS to $10,000 during the first two years, followed by a maximum benefit thereafter. The insured developed AIDS and died within one year, incurring more than the $10,000 maximum expenses covered within the initial two year policy period. The Fifth Circuit affirmed the trial court's grant of Summary Judgment to the insurer, concluding that Title III of the ADA did not apply to the coverage terms of the health insurance policy. As long as the insurer offered the same product to all potential subscribers, the insurer was not required to change the terms of its product to accommodate the plaintiff.

In finding no violation of Title III of the ADA, the Fifth Circuit followed the overwhelming weight of authority from the other circuits that have held that Title III of the ADA does not govern the content or terms of an insurance policy, nor permit court modification of the terms and conditions offered therein. *See Ford v. Schering-Plough Corp* .,

145 F.3d 601, 613 (3d Cir.1998) (insurance policy limiting coverage for mental disabilities did not violate Title III) [5]; *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006, 1012 (6th Cir.1997) (concluding that Title III does not regulate the content of goods and services)[6] ; *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557, 559-63 (7th Cir.1999) (insurance policy with cap on AIDS coverage did not violate Title III) ), *cert. denied*, 120 S.Ct. 845 (2000)[7]; *see also Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir.2000) (concluding that a disability plan, which provided greater benefits for physical disabilities than for mental ones, did not violate the ADA)[8]; *Chabner v. United of Omaha Life Ins. Co.,* 225 F.3d 1042, 1047 (9th Cir. 2000) (finding no violation of the ADA when insurer offered disabled person a life

---

[5] The *Ford* court noted that "[t]he purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided." Therefore, "[j]ust as a bookstore must be accessible to the disabled but need not treat the disabled equally in terms of books the store stocks, likewise an insurance office must be physically accessible to the disabled but need not provide insurance that treats the disabled equally with the non-disabled."

[6] The *Parker* court stated that "Title III does not govern the content of a long-term disability policy offered by an employer. The applicable regulations clearly set forth that Title III regulates the availability of the goods and services the place of public accommodation offers as opposed to the contents of goods and services offered by the public accommodation." Rather, [t]he purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided."

[7] The *Doe* court concluded that Title III "does not require a seller to alter his product to make it equally valuable to the disabled and to the non-disabled, even if the product is insurance . . ." because "[t]he common sense of the statute is that the content of the goods or services offered by a place of public accommodation is not regulated . . . . " The court cited the following as examples, that "a camera store may not refuse to sell cameras to a disabled person, but it is not required to stock cameras specially designed for such persons" and that a book "store is not required to alter its inventory in order to stock goods such as Braille books that are especially designed for disabled people."

[8] The *Weyer* court found that "Title III does not govern the content of a long-term disability policy offered by an employer . . . [and] does not require provision of different goods or services . . . . " Thus, "an insurance office . . . need not provide insurance that treats the disabled equally with the non-disabled." Therefore, "Title III does not address the terms of the policies that Unum sells."

11

insurance policy at higher premium than those offered to non-disabled persons)[9]; *Lenox v. Healthwise of Kentucky, Ltd.*, 149 F.3d 453 (6th Cir.1998) (finding that the ADA does not prohibit health insurance providers from differentiating between persons with different conditions).[10] Title III requires access to insurance policies, but does not require equality in the content of insurance policies for the disabled.[11] *See Id.*

Here, Unum terminated Morrison's benefits under the pre-existing condition clause in its policy, determining that her continued inability to work was not based on a covered injury. This court is not called upon to determine the whether Unum's decision to terminate benefits under the terms and conditions of its policy, as written, was correct. This court can only decide whether Morrison's claim is permitted under Title III of the ADA. Based on the language of the statute, as interpreted by the Fifth Circuit in *McNeil*, the court concludes that, as a matter of law, Morrison's claim is not permissible under Title III of the ADA.

Morrison was not denied access to the policy as written. To the contrary, Unum offered the policy to Morrison on the same terms that it offered the policy to other employees.

---

[9] The *Chabner* court noted that "Title III . . . does not address the terms of the policies the insurance companies sells" and that "an insurance office . . . need not provide insurance that treats the disabled equally with the non-disabled."

[10] The *Lenox* court explained that although the insured's condition was excluded from coverage making her policy worth less to her than a person with a different ailment, because her complaint was directed at the "mix of goods and services offered by an insurance company" the complaint was not actionable.

[11] While the circuit courts differ as to whether Title III regulates access to physical places, as opposed to non-physical places, they are consistent in their findings regarding the regulation of content. It is the finding as to content in *Ford*, *Parker* and *Doe* on which the *McNeil* court relied.
 Although Morrison argues that the Ninth Circuit decisions in *Chabner* and *Weyer*, on which *Chabner* was based, are inapplicable because the court's holding was limited to a finding that Title III applies only to physical place of accommodation, that argument is not correct. In *Weyer*, the court set forth the three arguments asserted by Unum as to why the plaintiff could not bring suit under Title III. Those arguments were, first, that Unum is not a place of public accommodation, second, that Title III relates only to the availability of goods and services and not the content of the goods, and third, that Unum's activities fall within the safe harbor provision. The court expressly held that "[w]e agree with Unum and believe that each reason is independently sufficient to prevent Weyer's suit against Unum under Title III." *Weyer*, 198 F.3d at 113-114.

Moreover, as a covered employee, she received benefits under the policy in accordance with its terms. Thus, Morrison had non-discriminatory access to the policy (the "good").

While Morrison may argue that Unum's adverse claim decision discriminatorily denied her access to benefits under the policy, her policy, as written, did not provide for further payments. By denying her further benefits, Unum treated Morrison just as it would treat any other policyholder, terminating disability payments once it determined that Morrison's disability was as a result of her pre-existing condition.

Further, a uniform pre-existing condition clause, which excludes the treatment of all conditions that pre-date an individual's eligibility for benefits from coverage, is not a disability-based distinction. *See McLaughlin v. General American Life Ins.,* 1998 WL 736689, *2 (E.D.La. 1998) *citing Krauel v. Iowa Methodist Medical Ctr.*, 95 F.3d 674, 677 (8th Cir.1996). Here, the pre-existing condition provision of the policy, as written, is equally applicable to any individual who is diagnosed with a condition that meets the policy's pre-existing condition definition. The pre-existing condition provision applies to both employees who are covered under the ADA and those who are not. Benefits would be unavailable because of the pre-existing condition provision if the claimant suffered from pre-existing arthritis (which is not classifiable as a disability under the ADA), or from pre-existing cancer (which is classifiable as a disability under the ADA). The pre-existing condition provision applies without regard to whether or not the pre-existing condition is covered under the ADA. There is no disparate treatment under the policy, as written and offered; the policy provided to policy holders who are covered by the ADA is the same as the policy provided to those policy holders who are not.

Morrison argues that she is not attempting to re-write or modify Unum's policy, but rather that she is merely asking that Unum apply the policy in a non-discriminatory manner. The crux of Morrison's argument is that an insurer cannot limit benefits under its pre-existing condition provision to those individuals who suffer from a condition defined by the ADA as a disability, in the same way that it can with respect to individuals who suffer from a condition which does not qualify as a disability under the ADA. Viewed in this light, it is clear that Morrison is challenging the content of the good (the policy) that Unum offers. If this court were to accept Morrison's argument, this court would, in effect, require modification of the policy, by precluding an insurer from enforcing its pre-existing condition clause against individuals who suffer from any ADA defined disabling condition, essentially "writing out" the provisions and rendering the provisions meaningless.[12] Title III of the ADA does not reach so far as to permit this type of regulation of the content of the good offered. *McNeil, supra*. Morrison's Title III claim therefore must fail and Summary Judgment is properly granted in favor of Unum on this claim as a matter of law.

### III. State Law Claims

In light of the above, Morrison's federal claim under Title III of the ADA is dismissed. Accordingly, no federal question remains before this court.

A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Indeed, when a court dismisses all federal claims before trial, the general rule is to dismiss any pendent

---

[12]Moreover, Morrison's construction would lead to absurd results. An insurer would be prohibited from enforcing a pre-existing condition clause against a person covered by the ADA, while permitting enforcement against individuals who are not covered by the ADA, providing the former group more benefits than the latter.

claims. *Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999) *citing Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989). However, the dismissal should be without prejudice. *Id*. Dismissal is particularly appropriate when the remaining state law questions present difficult, novel or complex state law issues. *Parker & Parsley Petroleum v. Dresser Industries*, 972 F.2d 580, 589 (5th Cir. 1992). The questions of state law presented here clearly fall within this category. Thus, the undersigned declines supplemental jurisdiction over plaintiff's state law claim. That claim will be dismissed without prejudice.

Signed this 10th day of September, 2008 at Lafayette, Louisiana.

*[signature]*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE